Case number 21-5209, United States of America v. Taurus Cooper. Oral argument not to exceed 15 minutes per side. Mr. Stengel, you may proceed for the appellant. Mr. Stengel, you may proceed for the appellant. Good morning. May it please the court, Mike Stengel on behalf of the Memphis Bar. Proud to be here on behalf of Taurus Cooper. I'd like to reserve four minutes for rebuttal. Taurus Cooper is here because the district court failed to apply to suppress the evidence after it found the protective sweep that was conducted by law enforcement was indeed illegal and unconstitutional. The district court's ruling relied on it finding improperly in Mr. Cooper's opinion that a consent to search form was voluntarily given immediately after the illegal sweep. And the district court applied the inevitable discovery doctrine based upon finding that the consent was voluntary. The district court made several errors in doing that. First, after finding the sweep illegal and unconstitutional, it failed to apply the presumption that the consent was tainted by the illegal sweep. And that is a critical error which this court must consider in its de novo review. It becomes even more critical because in finding the consent voluntary, the district court noted that it was a very close question. It found the consent voluntary. If just so, was the end of the district court's sentence. Those all sound a little bit like factual assessments made by the district court, to which we owe pretty great deference. But I want to ask you whether the district court actually thought about this case right and actually whether the parties have framed this case correctly. So the inevitable discovery doctrine, which is what the United States is arguing here, usually asks a hypothetical question. What would have happened if the illegality had not occurred, right? So your classic case is, you know, they find the gun as in this case, but the gun was in a car and they impounded the car and they would have found the gun anyway because of, you know, they always inventory the vehicle. And so they would have found it anyway, and so discovery is inevitable. What would have happened? The question here, right, they found the gun during the protective sweep, and then the question here is we have to ask a what would have happened question, right, not an everybody's argued an attenuation question. And I'm just wondering whether thinking about it in terms of attenuation is the right way to think about it even if the protective sweep had not happened. And if she had given her consent, obviously they would have found the gun. Judge, I think you're correct. One of the several errors that the district court made was focusing on what happened afterwards when the case law is very clear that given the finding that the sweep was illegal, in order to the period of time that you must then focus on in looking at inevitable discovery is what was the situation immediately before the illegality. Okay, so the attenuation goes to whether or not the consent was voluntary. But I would agree that the portions of the district court order that focus on what happens after the sweep is conducted is focusing on the wrong period of time. Ann? Okay, so how would – but nonetheless, you argue all of these factors like flagrancy and what period of time passed. I mean, you both below and in this court used that attenuation test. So I'm in a bit of a muddle about how we're supposed to think about this case because I'm not sure it's been framed right. Maybe it has, but you just agreed with me that it wasn't framed right, but your briefing argues these attenuation factors. So help me out. I'll try, Your Honor. Thank you. The reason – number one, again, I agree with the court that the focus, once you find – and it's settled, the government did not appeal the finding that the sweep was illegal. So that is settled. And therefore, the proper period to focus on is the moment before the sweep. So what are we asking the moment before the sweep? We ask would she have consented nonetheless? Or what question do I ask in the moment before the sweep? Well, I think you have to look at the record and what would have occurred had the sweep not occurred, the illegal sweep not occurred. And, frankly, here we have no idea whether she would have consented. Again, going to the consent is focusing on the wrong period of time. There's also a case law that says that you cannot, in situations like this, focus on whether probable cause or a warrant existed because if you look at that, which, of course, the district court addressed a little bit in its order, I think you would probably – because by looking at that, what you're essentially saying is if probable cause exists, there's no warrant requirement. And so I don't think that we can assume – So how about – so Walter consented twice. So maybe your position is we should have considered the second one at all because that came after the illegal search. But she consented once before that, right, when you showed the picture of the different suspect and then went to the house and she – officers asked to come to the house and she said yes. Well, there is a dispute as to that. Well, it's fact-finding by the district court. That is fact-finding by the district court. This interview is not in favor of that. It is. So just assuming we agree with the district court that she consented to that search, why is it that evidence that she would have consented to a broader search that would have been lawfully disclosed to the government under the matters? Well, that consent itself, if you assume that the officer's testimony was correct and what she consented to was entry into the house to look for this other suspect that she recalled as Landon, I refer to as Landon. But the district court here made a finding, and I know you dispute this, but the district court made a finding that you could find a human being in between a mattress and a box frame, right? So the district court said that is a place you could look for a person, and she said, sure, come on into my house and look for this other suspect. Why isn't that – I mean the government didn't argue this as its primary theory, or maybe at all, but why isn't that consent to look in the house anywhere that a human being could be? So in a closet, under the bed, in between the mattress and the box frame, and that consent is evidence that she would have – I mean she did consent, so they would have found the body – I mean, sorry, the gun anyway. I understand where the court is coming from. I think I have to go back and address why I believe the district court was wrong in finding that she consented, recognizing the burden of proof and the need to demonstrate clear error. Essentially, it stems from the fact that the officers – one officer testified that she was – she invited them in to look. Her testimony was once she testified that the person laying in the picture was not present, that the officers rushed past her and spread out throughout the house. Again, I recognize what the district court found with respect to that. However, I think when you look at all the testimony, I do think that Mr. Cooper can meet the clear error test on that. Essentially, when you look at the officer's testimony, it's, in my opinion, much more consistent with Ms. Walton's testimony that the officers rushed past her. Frankly, they said that one of the deputies testified, we entered all at once almost like a blitzkrieg. What does that have to do with – what does that have to do with the scope of her consent? I think it goes to the credibility of the district court's finding with respect to her consent, allowing them to enter. When they talk about entering all at once in a blitzkrieg, they talk about we overwhelmed them with numbers. We were poised in a stacked formation to enter all at once. There's safety in numbers, so we enter all at once and spread out throughout the house and conduct this sweep. I think that goes towards her testimony, the credibility of her testimony, that once she said the person was not in the house, they rushed past her. I think that there's ample evidence in this record for this court to find those facts. I guess I thought – go ahead. I was just going to point you back to the standard of review. The district court said I don't find this witness's account credible. The district court heard the live testimony. It's hard for us. Judge Riedel. I thought your best argument was that she gave very limited consent to search for someone she knew that wasn't there and that that was a pretty inconceivable thing that she would have consented to a search of the entire home, including on her mattresses, and that it's pretty speculative for us to assume that she would have consented to that kind of search. That was put much more eloquently than I started out. But I do agree that even if the court agrees with the district court that she consented to them entering, their entry request was for a specific, limited purpose of looking for Blanton, and they exceeded the scope of that when they spread out throughout. And I see my time is up. If you need a rebuttal, I will address the court in a moment. Thank you. Thank you. A lawyer from the United States. May it please the court, my name is Naya Bedini on behalf of the United States. We ask that this court affirm the district court's denial of the motion to suppress. The evidence in this case, the gun was found during the search of Ms. Blanton's house, and it is true that the gun was found prior to the time Ms. Blanton gave consent to the officers, but the gun should nonetheless not be suppressed because of two related reasons. The first reason is that the government proved that under the inevitable discovery rule, the officers would have found the gun due to Ms. Blanton's consent. And the second part of this analysis is that Ms. Blanton's consent was voluntary. It was a question of fact that the district court determined properly. But the consent the government focused on was only the second consent, the consent that Ms. Blanton gave after the gun was already found. And I don't know that we have many, if any, inevitable discovery cases where a gun is already or evidence has already been found, and then we say, well, it inevitably would have been discovered because of voluntary consent. Don't we have to ask, would the consent have been given even without the initial illegality? That doesn't seem to be the question that the government was addressing. Under the inevitable discovery doctrine, as you pointed out earlier, we have to look what would have happened had the protective suite never occurred. And the government argued that two things would have happened. One, the government proved that it was probable for the police officers to ask for consent any time they perpetrated an arrest, and that makes sense here because in this case they knew that the defendant potentially was carrying a gun because of the picture that they had distributed amongst them, and they also knew that he was being arrested on gun and drug charges. And the district court believed the officers when they said that it was therefore probable to ask for consent. And the second thing that would have happened is which Ms. Blanton had given consent. And this was the question of fact. The district court decided. He looked at the – I'm sorry. He looked at all the totality of the circumstances. He recognized the fact that there was a prior search, that the officers had already found the gun, that could possibly make her consent futile. Nevertheless, that in itself is not controlling. The court looked at the other factors in this case, such as – Are we even able to look at those factors that given that that consent – the second consent came after the legal search. Are we even able to look at those factors or do we sort of erase that from our minds and go back to what the rule would have been like if that search had not occurred? Your Honor, that's why we – I think that's where the attenuation doctrine comes into play because in all those cases you do have a prior legality that happens. And the question on all the attenuation cases is whether the eventual consent – But those are for the Poison Street cases, right? There's a prior finding of discovered evidence and there's a secondary finding of evidence. The secondary finding is tied to the first one or is attenuated. Here we just have one piece of evidence. There's not two different pieces. One derived from an initial legal search and discovery. That's correct, Your Honor. But those cases are analogous in the sense that was the consent – she was told to think that her consent would be futile after it had found the gun, and that's just one piece of the totality of the circumstances. The court looked at the fact that there might have been some futility. She might have thought that she could not consent to the search. But nonetheless, because the fact that there was no coercion and especially the fact that she signed a waiver of rights form and the fact that she signed a consent to search form, both those forms informed her that at that point she could refuse consent. And this is the difference between this and the other cases. The defendant talks about the sequence of events, this being the same sequence of events. The fact that she was advised that she could refuse consent at that point is kind of what breaks – constitutes an intervening circumstance in this case. So if we – suppose we weren't going to consider those factors and we were going to try to go back in time and assume this first search didn't happen. Do you lose then? If you can't rely on most of the things you just told us, do you lose? Or is there some other reason why we should find that she would have consented? So can you repeat the owner if you were to find that? Well, I mean it feels like a lot of your argument is focused on legal search and then her consent and then her consent is valid and knowing and we're supposed to assume that she would have given that consent either way. But you're – you keep falling back on the second – the consent that came after the legal search. So suppose we couldn't consider that. And we just have to ask, would she have consented? Not did she consent voluntarily the second time. Right. But would she have consented the first time if there had not been the illegal protective suite? That is the question, Your Honor, and I think under the – this is a combination of both the inevitable discovery and the consent doctrine. So the question is that's what the government is trying to answer. Would she have consented nonetheless even if the illegal suite had not occurred? And that's our argument that she would have consented nonetheless. The fact that the gun was already found was just one, you know, one piece of it. And one reason, the other reasons were the facts that I already stated. And I want to point out that the court asked about the first search of the house. And I think the first – What was the first consent that she gave? The first consent that she gave is she told the officers they could come in the house and they could search for this other person. It was a ruse that the officers testified. They performed in situations that weren't forestimated from their own house. The district court, frankly, did not analyze the first search. And I think the parties did not go into the first search. But that – the district court believed the officers that, in fact, Ms. Walton did consent, did let them in so they could come to look for a different person. And also the district court stated that the fact that the officers looked under the mattress did not exceed the scope of that search. So although that first search has not fully been proved by the parties, I think, Judge, you pointed out that – as you pointed out, that there was a valid first search that – Are you drawing conclusions from that, correct me? No, Your Honor, I just – I don't have the argument for you, but, you know, a little bit. But, I mean, one argument you might be making is because she consented once to a search, she would have surely consented to – either that first consent was to everything in the home, including under the mattress, or it was more limited, but she would have consented to a broader search than they asked. Yes, Your Honor, I – So now isn't that the goal that they would discover to be done, because she would have consented in some capacity? Your Honor, I guess to clarify, the parties did not focus really on the first search. That is an argument that I guess we should have made. Well, let's just assume we're focusing on it now. Right. Should we focus on it, or do you – that's why I asked you, do you lose? Do you – if you do not make this argument, and so it's not preserved, and so if we disagree with other points, you lose? That supports – that's another argument in support of the fact that Ms. Holton would have consented. She would have consented because of the reasons that I stated, the fact that she was fully advised of her rights. She signed a consent to search form where she allowed them to search her entire house, and then in addition, she did consensually let the officers in the house and allowed them to search for this other person. So I think that supports the fact that, you know, the government proved that she would have consented by a preponderance of the evidence. And I would – Do we have a remand? I mean, we agree with that last point. I think Ms. Holton, do we have a remand on that point to the district court? Does the district court make a finding of whether consent to the initial search would be enough to support, you know, the discovery rule that you're advocating for? The district court has already held that the consent was voluntary and the inevitable discovery would apply. I guess there would be nothing, but the district court held the second consent was voluntary. I think Judge Ramos' point is if we don't think that second consent is – can retroactively bless the protective suite, it might be evidence of whether she would have consented in absence of the protective suite. But if it's not enough evidence, what do we do? Do we remand to the district court? Do we – Your Honor, I think – Apart from other grounds, what do we do? Reverse? The fact that she consented – So the question is would she have consented? And if the court disagrees with the fact that – based on the facts that the district court analyzed, and if the court will decide to remand this case, then I think it should be remanded for the district court to consider that first search. However, our position is that that is not necessary. There were sufficient facts for the district court to conclude that Ms. Walton would have consented nonetheless, despite the fact that the gun was found, because she did give valid consent after the gun was found. That is one factor that the court must consider. There are other factors, most importantly the fact that she was told of her rights. She would have consented at any point after. So our position is that there are sufficient facts in the record for the district court to be able to find that Ms. Walton would have consented nonetheless. But if the court disagrees, then we would then ask for a remand for the district court to consider her first consent to let the officers in the house to search for this additional person that they asked her to search for. That's definitely an analysis that the district court did not engage on. But the fact that consent is on the record, and the district court did believe the officers as far as that consent. If the court has no more questions, I ask that they affirm the district court. Thank you. Thank you. Mr. Stengel, you have a roll call. Thank you. I think in focusing on the first consent, the first thing that the court has to address is whether the officers would have even cared about searching the apartment. Remember, the landed, while the governor calls it a ruse, frankly it was a lie. Law enforcement was lying about why they were there. And the defendant, Mr. Cooper, the record is very clear. As soon as the door was opened, he was within officer's eyesight, seated on a couch. Upon entry, they immediately went to him, had him stand up, turn around. He was cuffed and under arrest. So, I don't think, given those circumstances, and that being the reason that they were there at Ms. Walton's house. This was not Mr. Cooper's house, although he occasionally spent the night, and they had been a couple for a couple of years. So, I think you have to address that, and you cannot assume that given what, if the officers are to believe, be believed, what they were requesting was to search for a non-existent person. Again, that's a very limited request. Well, okay. So, I understand your point. I think your point is not that she would not have consented, although I know you dispute that, but that even if she had consented to the initial search for the other individual, the officers wouldn't have carried it out because they didn't care about this other individual because he didn't exist. So, the search would not—she might have consented, but the search wouldn't have happened. So, I think I—that's right? That's right. But could she—but she's consenting to look in her house anywhere a person might be. Mr. Landon, right? That's the— Michael Landon, yes. The guy. But isn't that—in effect, the same thing as consenting to a protective suite? And we know they did that. They were searching in her house anywhere a body could be. So, we know they wanted to do that. Now, the manner in which that was carried out, I understand you're like guns blazing, blah, blah, blah, but why would we think they wouldn't carry it out? Well— They wanted to do it at least for safety purposes, and they did it. Their expressed reason was safety purposes. Does the reasons matter in the Fourth Amendment? I think—I think that here, because of the illegality and the time period that this court has to focus on, that the reasons do matter. I also think that I disagree, as raised in the brief, that the scope of the protective suite was exceeded. I think it's very clear from the officer's testimony. One said, yes, we're looking for bodies, but, of course, we also find evidence often. And I think that may have resulted in the flipping of the mattress initially. There was testimony they saw a slight bulge in the mattress. There was testimony they saw a slight bulge, but I think you have to look, and it's at ID 154 in the record. When you look at the deputy's specific testimony, he said he wasn't expecting any size of a person. There was a slight bulge. He thought there might be something there, not someone. And so I think that's very important. In other words, a gun isn't going to protrude the same way a human is going to, from the mattress. I so agree. Point being that a human under a mattress is going to be a different impression than a gun, unless it's really a gun, a really small person. In my house, it's common to find a cat under the bedspread, but I wouldn't confuse that with some other person in the house. My time is up. I've got to briefly say that I think that the violation was flagrant and egregious, again, contrary to the district court's finding. With that, I'd ask the court to grant suppression, and if it feels, based upon the way this record was developed, that it is not appropriate to vacate grant suppression and then remand for further proceedings consistent with the opinion. Thank you on behalf of Mr. Cooper. Oh, and Mr. Stengel, I understand you were appointed according to the CJA, and I thank you on behalf of the court for your service to your client. I thank the court for recognizing me.